# United States Court of Appeals
## For the First Circuit

No. 04-1691

UNITED STATES OF AMERICA,

Appellee,

v.

FRANK J. JIMÉNEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Torruella, Lynch and Lipez,
Circuit Judges.

David J. Wenc, with whom Wenc Law Offices was on brief, for appellant.
Thomas J. O'Connor, Jr., Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, were on brief, for appellee.

August 17, 2005

**TORRUELLA**, <u>Circuit Judge</u>.  Appellant Frank J. Jiménez was charged in a multiple count indictment with possession of a firearm on July 22, 23, and 24, 2002 (Counts Three, Six, and Eight) in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of a drug trafficking crime on July 22, 2002 (Count Five) in violation of 18 U.S.C. § 924(c).  After a jury trial in the U.S. District Court for Massachusetts, a jury returned guilty verdicts on all of these charges.

Jiménez appeals on various grounds: (1) he claims error in the denial of his motion to suppress evidence seized during a warrantless search of the residence where he was staying; (2) he alleges that the trial court abused its discretion in refusing his request for an evidentiary hearing for his second motion to suppress; (3) he claims that the trial court erred by failing to admit into evidence the written statement of Rafael Pérez, an unavailable witness; (4) he objects to the admission of that same witness's statements contained in a written confession; (5) he claims that the trial court should have given a proffered "missing witness" instruction to the jury; (6) he challenges the sufficiency of the evidence in support of his conviction, and (7) in the event all else fails, he claims that <u>United States</u> v. <u>Booker</u>, 125 S. Ct. 738 (2005), requires remand of this case for resentencing.  For the reasons stated herein, we reject appellant's contentions and affirm his conviction.

## I.

Essentially, the dispute concerns not the facts heard by the jury, but rather the application of the law to them.

Sometime in May 2002, ATF Special Agent Patrick Burns learned from David Steward, the owner of Triple A Guns, a gun store in West Springfield, Massachusetts, that a Rafael Pérez had purchased an unusually large number of firearms during the Spring of 2002. Burns reviewed Steward's records and confirmed this fact. Thereafter, Burns met with Michael Veilleux, the owner of another gun dealership called Guns & Gun Parts, and learned that Pérez had also purchased an unusually large number of firearms from Veilleux during that same period. Burns concluded that Pérez was possibly engaged in some kind of illegal activity and asked Vellieux to contact him if Pérez returned.

On July 22, 2002, Burns received a call from Veilleux, alerting him to the presence of Pérez at his store. Pérez was in the process of purchasing another firearm. Burns proceeded to the store and set up surveillance, whereupon he observed Pérez coming out of the store carrying a bag and accompanied by a child and a man, whom Burns was later able to identify as appellant Jiménez. Pérez had just purchased a Model P-85 Ruger pistol. Pérez, the child, and Jiménez got into a car that was registered to Pérez's wife at an address in Springfield, and drove away, with agent Burns attempting to follow them.

Burns lost Pérez in traffic and decided to proceed to the Springfield address to set up surveillance there.  At some point Pérez drove up, got out with the child and went into the house at that address.  Pérez was empty-handed.

Burns returned to Veilleux's store and learned that the man who had accompanied Pérez had two tattoos on his arm: one said "Freaky" and the other "La Familia."  Burns then checked with the Springfield Police Department, where he received information connecting appellant Jiménez with those tattoos, obtained a photograph of Jiménez, and learned that his street alias was "Freaky" or "Freaky-tie."

On July 23, 2002, Veilleux called Burns again to indicate that Pérez was back at his store with the same man as before, to purchase another firearm.  Burns proceeded to the store and was able to observe the Pérez/Jiménez duo coming out of the store together.  They got into a different car than the day before and drove away, again with Burns tailing them, but with no better results, losing them in traffic.

On July 25, 2002, Burns and Springfield Police Detective Ricardo Ortiz interviewed Pérez regarding his numerous firearms purchases.  Pérez told the agents that a friend of his named "Frank" was holding some of the firearms he recently had purchased. Pérez stated that he did not know Frank's full name, but would show them where Frank lived.  He then took Burns and Ortiz to the place

-4-

where Frank was staying in Springfield, located at 105 Jefferson Street.

Upon arrival, the lessee of the premises, Elsa Rodríguez, authorized the agents to search the residence. When they reached the second floor they were able to detect the odor of burning marihuana emanating from the front bedroom, the door to which was closed and locked, and which Rodríguez indicated was being used by appellant Jiménez. Rodríguez used a butter knife to force the lock open, and the agents proceeded to enter Jiménez's room. Inside they found a hand gun case, ammunition, cash, marihuana, and a digital scale. Jiménez was not in the room. Next, they proceeded to the rear bedroom, which belonged to Rodríguez, where they found Jiménez hiding on the floor next to a bed. Ortiz drew his weapon and called for Jiménez to show himself. When he stood up, Ortiz recognized him as being "Freaky," put him under arrest and placed handcuffs on him. At this point, another man emerged from the closet where he had been hiding and indicated that Jiménez had put a gun inside a pillowcase that was on the bed. Ortiz looked inside the pillowcase and found a 9 millimeter Ruger, Model P-89, pistol, bearing serial number 310-76049.

Jiménez was transported to the Springfield police station whereupon the agents returned to the bedroom that Jiménez had been using and seized the evidence they had found previously.

Burns and Ortiz returned to the police station to talk to Jiménez, whom they advised of his <u>Miranda</u> rights. Jiménez agreed to waive these and provided the agents with a written statement. In his statement, Jiménez told the agents that Pérez came to him looking for heroin "[t]his past Monday," meaning July 22, 2002, but that Pérez did not have any money with which to pay for the drugs. Pérez offered to "give [Jiménez] one gun instead of cash and when he got cash he would pay with cash and get the gun back." Jiménez then went with Pérez to Guns & Gun Parts, where Pérez purchased a gun, and Jiménez then gave Pérez some heroin. Pérez gave him "a 9 mm. I think it was a Ruger." Jiménez further stated that Pérez "returned with cash, which he said he earned by finding a buyer for the gun. I gave him the gun and he said he sold it." The records at Guns & Gun Parts showed that Pérez purchased a 9 millimeter Ruger, Model P-85, pistol, with serial number 301-09664. This gun was not recovered.

Jiménez further stated that he and Pérez went again to the same gun store the following day, July 23, 2002, where Pérez purchased another firearm. The store records show that Pérez's purchase on that day was a 9 millimeter Ruger, Model P-89, pistol, with serial number 310-76049. This was the same firearm seized from the pillowcase at the time of Jiménez's arrest, and Jiménez admitted to hiding the gun there.

Jiménez also stated that Pérez gave him two more guns on or about July 24, 2002, one of which was a .380 caliber firearm, which he in turn gave to an individual called "Jinxx." Jiménez did not know "Jinxx's" real name or exact address, but was able to provide his physical description, and agreed to take the agents to where he lived. On July 26, 2002, Jiménez showed Springfield Police Detective Misael Rodríguez where "Jinxx" resided at 2718 Main Street in Springfield. Later that day, Detective Rodríguez returned to that address and knocked on the door of the apartment described by Jiménez as belonging to "Jinxx," whereupon a man fitting the physical description of "Jinxx" supplied by Jiménez open the door. "Jinxx" consented to a search of his apartment, during the course of which Detective Rodríguez found and seized a .380 caliber Bersa, Model 85, pistol, bearing serial number 295197, which had been hidden above the tiles of a drop ceiling in the bathroom. The records of Triple A Guns showed that Pérez had purchased this gun on July 23, 2004.

At trial, it was stipulated that the two firearms seized -- the 9 millimeter Ruger, Model P-89, pistol and the .380 caliber Bersa pistol -- were manufactured outside of the Commonwealth of Massachusetts, and that on July 6, 2001, prior to the commission of the charged offenses in this case, Jiménez had been convicted of assault in the Springfield District Court, an offense punishable by a term of imprisonment exceeding one year.

## II.

### A. The evidence seized from Jiménez's room

We review a district court's decision regarding suppression of evidence under a bifurcated standard of review, United States v. Charles, 312 F.3d 10, 18 (1st Cir. 2000), whereby factual findings are examined for clear error, United States v. Lee, 317 F.3d 26, 29 (1st Cir. 2003), cert. denied, 538 U.S. 1048, while questions of law receive de novo scrutiny, id.

Jiménez challenges the seizure of the evidence found in his bedroom at 105 Jefferson Street on the basis that Rodríguez did not have the authority to consent to the warrantless search of his bedroom. The government contends that the evidence seized from Jiménez's room was properly admissible as evidence discovered pursuant to (1) a consent search, or (2) a protective sweep. Upon careful examination of the record, we agree that Rodríguez did not have authority to consent to the search of that particular room, and we question whether the agents were permitted to conduct a protective sweep of the room under the circumstances of this case. Regardless, we cannot but conclude that any error which might exist in admitting evidence from the search of Jiménez's room is harmless.

The Fourth Amendment's right to be free from unreasonable searches and seizures is grounded on the individual's expectation of privacy. See United States v. Thornley, 707 F.2d 622, 624 (1st

Cir. 1984) ("Whether the Fourth Amendment's prohibition against unreasonable searches and seizures has been violated depends on whether the person asserting a Fourth Amendment violation had a reasonable expectation of privacy in the place searched or the thing seized."). Jiménez was entitled to some expectation of privacy as to the bedroom he was using in Rodríguez's home. See Minnesota v. Olson, 495 U.S. 91, 96-97 (1990) (holding that an overnight guest has an expectation of privacy in the home in which he is staying).

Rodríguez had the authority to consent to the search of the common spaces of the house. See United States v. Matlock, 415 U.S. 164, 171 (1974) (Permission to search may be obtained from a third party who possesses common authority over the premises.). She clearly had common authority to consent to the search of her own bedroom, where Jiménez was found and arrested. Rodríguez did not, however, have the common authority over Jiménez's bedroom in order to give the police consent to search it. The authority which justifies third-party consent to search rests upon

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-habitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

United States v. Hyson, 721 F.2d 856, 859 (1st Cir. 1983) (quoting Matlock, 415 U.S. at 171 n.7). In her testimony, Rodríguez

-9-

characterized Jiménez's bedroom as "his space." She did not enter the room as a regular matter, and she told police before they entered that she was not supposed to enter the room. Rodríguez did not even have a key to go into the room and instead had to use a butter knife to pry the door open. We find, therefore, that Rodríguez's consent to the search of the house could not extend to the search of the room Jiménez was using.

The fact that the agents smelled the scent of burning marihuana emanating from the room when they reached the second floor does not cure the problem. "'[O]dors alone do not authorize a search without a warrant.'" United States v. Sharpe, 470 U.S. 675, 699 n.12 (1985) (quoting Johnson v. United States, 333 U.S. 10, 13 (1948)). Where the odor of a forbidden substance is identified by someone found qualified to know the odor, there may well be probable cause to justify issuance of a search warrant, Johnson, 333 U.S. at 13, but it is not sufficient to justify a warrantless search. Horton v. California, 496 U.S. 128, 137 n.7 (1990) (collecting cases on the rule that "no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances'"). The government does not argue otherwise.

The government also contends that Jiménez's room was properly searched by the agents as they were conducting a "protective sweep." The government argues that the search of Jiménez's bedroom was justified because the agents had a reasonable

-10-

basis for believing that Jiménez was present in the home, was using marihuana, was likely armed with a gun he received from Pérez, and therefore posed a potential danger to them as they conducted their search.

The Supreme Court has defined a "protective sweep" as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Maryland v. Buie, 494 U.S. 325, 327 (1990). This is set within the context of the longstanding view that "[t]he touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" United States v. Knights, 534 U.S. 112, 118-19 (2001) (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)). Hence, "the searching officer [must] possess[] a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[] the officer in believing . . . that the area swept harbored an individual posing a danger to the officer or others." Buie, 494 U.S. at 327 (internal quotation marks and citations omitted).

-11-

This case presents the difficult issue of determining whether or not a protective sweep was objectively reasonable under the circumstances.

Although Buie concerns protective sweeps incident to arrest, this court has extended this doctrine to include protective sweeps in conjunction with the execution of search warrants, Drohan v. Vaughn, 176 F.3d 17, 22 (1st Cir. 1999); United States v. Doust, 916 F.2d 757, 759 (1st Cir. 1990), and recently to include protective sweeps where the existence of exigent circumstances prompts the entry of police, United States v. Martins, -- F.3d --, No. 04-1474, 2005 WL 1502939 (1st Cir. June 27, 2005).

In this case, Rodríguez denied that Jiménez was home, but gave the agents permission to enter the house and search for Jiménez and firearms. The agents did not have a warrant for Jiménez's arrest or a search warrant. No one was under arrest at the time the agents searched the room Jiménez was using, and no exigent circumstances allowed for their entry into the home. The government contends that the smell of smoke emanating from the front room escalated the threat the agents were facing during their search because it was reasonable for them to suspect that Jiménez was in the house, smoking marihuana, likely in possession of a firearm, and possibly lying in wait for them.

Given that the agents were in the home for the purpose of searching for Jiménez, they must have already had some suspicion

-12-

that he was there.  The fact that Rodríguez opened the room for them with a butter knife suggests that she was not afraid of what might have been on the other side of the door and the agents were not particularly concerned for her safety.  Under the circumstances, and based on the limited recitation of the facts we are presented with and the lack of reasonableness determination made by the district court below, we are not at all certain whether a protective sweep, to include Jiménez's locked bedroom, was appropriate under these circumstances.

In the instant case, however, the question of whether the protective sweep justifies the warrantless search of Jiménez's bedroom is of no moment, because the error of admitting the evidence seized from the room, if any, is harmless.  Where, as here, the objection is preserved, erroneous admission of improperly seized evidence at trial is reviewed for harmless error.  United States v. Barone, 114 F.3d 1284, 1293 (1st Cir. 1997).  Under harmless error review, the burden is on the government to show that the supposed error did not affect the outcome of trial.  United States v. Castellini, 392 F.3d 35, 52 (1st Cir. 2004) (considering factors such as "considering, among other things, the centrality of the tainted material, its uniqueness, its prejudicial impact, the uses to which it was put during the trial, the relative strengths of the parties' cases").

The physical evidence seized from Jiménez's bedroom pales in light of the other evidence introduced at trial, including Jiménez's undoubtedly voluntary and fully corroborated confession, in which he admitted that (1) he and Pérez entered into a guns-for-heroin agreement, (2) they consumated that agreement on July 22, 2002, when Pérez purchased what was later determined to be a 9 millimeter Ruger Model P-85 pistol, which he used as a deposit with Jiménez in exchange for heroin, pending later substitution for cash, (3) Pérez later returned to pay cash in exchange for the Ruger, and (4) he possessed other firearms obtained from Pérez, including the Ruger Model P-89 pistol that was seized from the pillowcase and the Bersa pistol that was later recovered from "Jinxx" at his home. Further evidence against Jiménez, both testimonial and documentary, corroborated Jiménez and Pérez's presence at Guns & Gun Parts on July 22 and 23, 2004, and the purchase of the guns which he confessed to possessing. This, together with copious other documentary, physical and testimonial evidence, was more than sufficient to convict Jiménez, irrespective of the evidence seized from his bedroom.

**B. The district court's refusal to hold a second suppression hearing regarding Jiménez's inculpatory statements to Detective Rodríguez**

On June 3, 2003, Jiménez filed a motion to suppress his post-arrest statements, challenging his waiver of his Miranda rights and the voluntariness of the written confession he made

shortly after his arrest. On July 11, 2003, the district court held an evidentiary hearing and denied Jiménez's motion, ruling that Jiménez's waiver and subsequent confession were voluntary. We see no valid reason for disagreeing with these rulings.

Shortly before trial, Jiménez sought to suppress an additional statement he made to Detective Rodríguez regarding his heroin sources and his cooperation with the police in the recovery of the Bersa pistol, which were not part of his earlier confession. He sought suppression again on the basis of alleged involuntariness, as well as the alleged failure to waive Miranda rights. On January 9, 2003, the district court held a non-evidentiary hearing, and relying in part on the evidence heard at the original suppression hearing, concluded that the brief lapse of time -- five to six hours -- between the original Miranda warnings and confession, and the later statements to Detective Rodríguez, did not vitiate the voluntariness of the statements.

We review the district court's decision not to hold an evidentiary hearing for abuse of discretion. United States v. Calderón, 77 F.3d 6, 9 (1st Cir. 1996). "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996). The purpose of a voluntariness hearing is to ensure that unreliable, coerced confessions are not

used to secure a defendant's conviction.  <u>Jackson</u> v. <u>Denno</u>, 378 U.S. 368, 376-77 (1964).  Nothing in <u>Jackson</u>, or <u>Sims</u> v. <u>Georgia</u>, 385 U.S. 538 (1967), another case Jiménez relies on, makes the holding of a voluntariness hearing mandatory where the facts are not disputed and the district court can therefore reach a determination about voluntariness without the need for additional evidence.  Such are the present circumstances.

The district court had already heard evidence at the previous evidentiary hearing about the circumstances surrounding Jiménez's written confession and his waiver of his <u>Miranda</u> rights. The court was also on notice about Jiménez's use of alcohol and liquor, and of the lapse of time between his written confession and his oral statements to Detective Rodríguez.  In denying Jiménez's request, the district judge made specific reference to these matters.  The court then concluded that the lapse of time between the <u>Miranda</u> waiver and the written confession, and the statements to Detective Rodríguez, was insufficient to nullify the <u>Miranda</u> warning or render the later statements involuntary.

Given these circumstances, there was no abuse of discretion in the court's refusal to hold a second evidentiary hearing.

## C.  The refusal to admit Pérez's confession

On July 26, 2002, Pérez made a written confession to law enforcement officials in which he spelled out his relationship to

Jiménez, and in which he stated that he did not provide guns to Jiménez in exchange for heroin. At trial, Jiménez attempted to introduce into evidence this part of Pérez's statement, alleging that the statement was admissible under Federal Rule of Evidence 804(b)(3), as a statement against penal interest.[1] The court denied admission, ruling that said portion of Pérez's statement was not against penal interest, and that in any event, corroboration was lacking.

The standard of review for an evidentiary ruling is abuse of discretion. United States v. Otero-Méndez, 273 F.3d 46, 53 (1st Cir. 2001). Abuse of discretion occurs "when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales." United States v. Gilbert, 229 F.3d 15, 21 (1st Cir. 2000) (quoting United States v. Roberts, 978 F.2d 17, 21 (1st Cir. 1992)).

For a statement to be against penal interest it must tend to subject the declarant to criminal liability to such an extent that a reasonable person would not make the statement unless it were true. Williamson v. United States, 512 U.S. 594, 599 (1994).

_____

[1] Fed. R. Evid. 804(b)(3) reads in its pertinent part: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

-17-

There was clearly no abuse of discretion in the district court's evidentiary ruling. Pérez's statement that he never exchanged guns for heroin with Jiménez did not inculpate Pérez of any crime, but rather exculpated him of criminal liability under 18 U.S.C. § 924(c). The fact that it also exculpated Jiménez of that crime is immaterial to its admission under Rule 804(b)(3). If Pérez wanted to exculpate Jiménez on the information contained in his extra-judicial statement, he had to testify in court, under oath, and subject to cross-examination. This he refused to do, as was within his rights.

Having so decided, we need not discuss the issue of whether the statement was also inadmissible for lack of corroboration.

## D. The admission of Jiménez's confession on the basis of alleged violations to the Confrontation Clause

The confession of Jiménez that was admitted into evidence recounts conversations that he had with Pérez about the sale of heroin, the use of firearms as collateral for these transactions, and the various specific firearms that Pérez provided. Although Jiménez sought suppression of these statements as part of his allegation of involuntariness of the confession, a matter we have previously discussed, he now raises, for the first time, an objection to the statements made by Pérez that are repeated by Jiménez in that confession, claiming that by admitting the same, the district court deprived him of his right to confront that

-18-

witness.  Jiménez also objects to the testimony of Detective Ortiz and Agent Burns, previously detailed, in which they testified to statements by Pérez during the course of their investigation of Jiménez's activities.  Since no objection was made to any of this evidence during trial, we review this matter for plain error.  Barone, 114 F.3d at 1293.

Jiménez's reliance on Crawford v. Washington, 541 U.S. 36 (2004), is misguided.  "The [Confrontation] Clause [] does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  Id. at 59 n.9. The challenged statements were properly admissible, not for their truth, but to provide context to (1) Jiménez's admissions in his written confession, and (2) the investigatory steps pursued by Burns and Ortiz.  United States v. McDowell, 918 F.2d 1004, 1007 (1st Cir. 1990) ("[A] defendant, having made admissions, [cannot] keep from the jury other segments of the discussion reasonably required to place those admissions into context.").

Such is the present situation.  Not only is there no plain error, there is no error at all.

Furthermore, it can be fairly said that Jiménez adopted all of Pérez's statements in his confession.  Therefore, even were Pérez's statements therein admitted for the truth of what Pérez said, the Confrontation Clause is not implicated when there is adoption of such statements by the defendant, who thus becomes the

-19-

declarant or "witness" himself.  <u>United States</u> v. <u>Allen</u>, 10 F.3d 405, 413 (7th Cir. 1993).

## E.  The "missing witness" instruction

Jiménez sought to call Pérez as a witness at trial, but Pérez invoked his Fifth Amendment right to refuse to testify.  At the conclusion of the trial, Jiménez asked that the jury be given a "missing witness" instruction under the theory that Pérez was "peculiarly available" to the government since it could have immunized Pérez.  The district judge rejected the request, a decision which we review under an abuse of discretion standard. <u>United States</u> v. <u>Otero-Méndez</u>, 273 F.3d 46, 55 (1st Cir. 2001).

Again, there has been no abuse of discretion but rather, the district court followed the circuit precedent established in <u>United States</u> v. <u>St. Michael's Credit Union</u>, 880 F.2d 579, 597 (1st Cir. 1989), in which the identical issue raised by Jiménez was decided in the identical manner as was decided by the district court in this case.  In <u>St. Michael's</u>, we held that the government's power to grant immunity from prosecution to a witness does not make that witness more available, or "peculiarly available" to the government. <u>Id.</u>

## F.  The sufficiency of the evidence

In a nutshell, Jiménez challenges the sufficiency of the evidence that he possessed a firearm in furtherance of a drug trafficking crime.  His contention is predicated on two points: (1)

-20-

that his confession as to that charge was not adequately corroborated, and (2) that the government did not prove that he possessed a firearm in furtherance of a drug trafficking crime.

We review the district court's denial of a motion for acquittal for insufficiency of evidence de novo. Staula, 80 F.3d at 604. "If the evidence presented, taken in the light most agreeable to the government, is adequate to permit a rational jury to find each essential element of the offense of conviction beyond a reasonable doubt, then the defendant's claim fails." United States v. Valle, 72 F.3d 210, 216 (1st Cir. 1995). The court must "choose from among competing inferences the one best fitting the prosecution's theory of guilt." United States v. Licausi, 167 F.3d 36, 45 (1st Cir. 1999). "The evidence may be entirely circumstantial, and the government need not disprove every hypothesis of innocence." United States v. Escobar De-Jesús, 187 F.3d 148, 172 (1st Cir. 1999). We need "only satisfy [ourselves] that the guilty verdict finds support in a plausible rendition of the record." Licausi, 167 F.3d at 45 (internal quotation marks omitted). See also United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992) (same).

Pérez's use of firearms as collateral to purchase heroin from Jiménez is corroborated beyond doubt, by testimonial, documentary, and physical evidence, and is detailed earlier in this opinion at pages five and six. We need not repeat ourselves.

-21-

The corroborated evidence establishes that firearms were used in furtherance of a drug crime, because the use of the firearms as collateral facilitated the sale of heroin by Jiménez to Pérez.

## G.  Booker Sentencing Issue

Jiménez appeals from a sentence imposed prior to the Supreme Court's decision in United States v. Booker, 543 U.S. ---, 125 S. Ct. 738 (2005).  In his supplemental Booker brief, Jiménez argues that the district court erred in sentencing him under a mandatory Guidelines system and that he is entitled to resentencing in conformance with Booker.[2]  The government opposes a remand.

Jiménez acknowledges that his claim of Booker error is unpreserved.  See United States v. Antonakopoulos, 399 F.3d 68, 76 (1st Cir. 2005) (A Booker error is preserved "if the defendant below argued Apprendi or Blakeley error or that the Guidelines were unconstitutional").

Following his conviction, Jiménez was sentenced in accordance with the then-mandatory Guidelines to 110 months' imprisonment for his conviction as a felon in possession of a

---

[2]  Appellant's original brief was filed in January 2005, before Booker was decided, and was thus based mostly on Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. ---, 124 S. Ct. 2531 (2004), although it does not appear that these issues were preserved.  After Booker was decided, we afforded the appellant an opportunity to file a supplemental brief.

firearm, to be followed by an additional 60 months' imprisonment mandated by his 18 U.S.C. § 924(c) conviction.

Both the government and Jiménez objected to the presentence report, with Jiménez seeking a downward departure, and the government wanting an upward adjustment based on allegations of obstruction of justice.[3] The district judge denied both motions.

In deciding the sentence to be imposed, the court added three additional criminal history points for a subtotal of 9. To that were added two points pursuant to U.S. Sentencing Guidelines (U.S.S.G.) § 4A1.1(d), on the basis that Jiménez was under the criminal justice sentences imposed on June 7, 1999 and July 6, 2001 in the Springfield District Court. An additional point was then added pursuant to U.S.S.G. § 4A1.1 (c), because the present offenses were committed less than two years following appellant's release from custody on December 21, 2001 (for the June 7, 1999 and July 6, 2001 sentences).

Although appellant recognizes that our Antonakopoulos decision concluded that Booker error is not "structural," Antonakopoulos, 399 F.3d at 80, and thus does not automatically require resentencing, he asks us to reconsider that conclusion. We cannot, however, oblige. "Absent unusual circumstances not present here, panels of this court are bound by prior circuit decisions."

---

[3] While in pretrial detention Jiménez was recorded trying to persuade Rodríguez to testify falsely at the suppression hearing.

<u>United States</u> v. <u>Villafañe-Jiménez</u>, 410 F.3d 74, 85 (1st Cir. 2005).

In <u>Antonakopoulos</u>, we determined that we review unpreserved <u>Booker</u> claims for plain error. <u>Antonakopoulos</u>, 399 F.3d at 75. For Jiménez's claim to survive plain error review, this court must find a reasonable probability that the district court would impose a more favorable sentence on Jiménez under the new advisory Guidelines. <u>Id.</u> at 75.

Jiménez argues that the district court would likely have imposed a different sentence were it not for the mandatory Guidelines regime, because the Guidelines circumscribed the court's ability to consider many factors Jiménez presented in support of motions for downward departure, including substituting community confinement for prison, cooperation with state and local authorities, over-representation of the seriousness of criminal history, extraordinary family circumstances, diminished capacity, emotional and mental health problems, substance abuse problems, the disparity in how Jiménez was charged compared to Rodríguez and Pérez, and credit for state time served. It is apparent from the record that the district court felt restricted by the Guidelines in its consideration of at least some of these arguments. For example, at the sentencing hearing, the court stated that:

> Family circumstances are just heartbreaking. The notion that there will be three [] children who now will be growing up

without their father there for them is just terrible to even contemplate.

But this is not the kind of situation that -- the courts have made clear this is not the kind of situation where I can downward depart.

The district court went on to state:

I will tell you . . . that I am not going to impose a sentence higher than the 170 months which is the very bottom end of the Guideline range, and which under federal law I believe is the lowest sentence that I am entitled to impose.

I believe any sentence below 170 months would be an error that would be corrected by the Court of Appeals and would be a sentence that I'm simply not permitted to impose as a matter of law.

While these statements clearly suggest that the district court might have imposed a more lenient sentence if the Guidelines had been advisory at that time, his next statement tears this likelihood asunder:

Even if I had the discretion, which I do not believe I have, but I will say even if I had the discretion to depart downward under these circumstances, I'm afraid I would not exercise it. I believe 170 months is the lowest possible sentence under these circumstances.

Thus, Booker is of no avail to Jiménez in opening the possibility of altering his sentence.

### III.

For the reasons stated herein, the conviction of appellant is affirmed.

**Affirmed**.

-25-