USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________ No. 96-1036 UNITED STATES, Appellee, v. CARMELO MONTA EZ, Defendant-Appellant. ____________ ERRATA SHEET The opinion of this Court issued on January 28, 1997, is amended as follows:  On Page 7, second line from bottom, delete the "s" after the apostrophe in "Monta ez." UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1036 UNITED STATES, Appellee, v. CARMELO MONTA EZ, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin, Circuit Judge, _____________ and Barbadoro,* District Judge. ______________ _____________________ David L. Martin, by Appointment of the Court, for appellant. _______________ Margaret E. Curran, Assistant United States Attorney, with __________________ whom Sheldon Whitehouse, United States Attorney, and Zechariah ___________________ _________ Chafee, Assistant United States Attorney, were on brief for ______ appellee. ____________________ January 28, 1997 ____________________  ____________________ * Of the District of New Hampshire, sitting by designation. BARBADORO, District Judge. A jury found Carmelo BARBADORO, District Judge. _______________ Monta ez guilty of distributing and conspiring to distribute crack cocaine. Because we conclude that the district court s entrapment instruction did not adequately apprise the jury of Monta ez theory of defense, we vacate both convictions and remand for a new trial.  I. I. The government presented evidence at trial that Monta ez sold an undercover agent an ounce of crack cocaine ( crack ). Monta ez conceded that he distributed the crack, but contended that he had been entrapped by Cheryl Lauber, one of the agent s informants.1 Monta ez testified that he met Lauber while smoking crack at a friend s house and thereafter smoked crack with her on a regular basis. He and Lauber later lived together for a time with Lauber s children at a friend s apartment. Several weeks after they met, Lauber told Monta ez that she needed money and asked him to buy her two kilos of cocaine so that she could re- sell it at a higher price. Monta ez responded by claiming that he did not know where to buy such a large amount of cocaine and that he did not have enough money to buy even an ounce.   ____________________ 1 Not surprisingly, the government offered considerable evidence to refute Monta ez version of the events leading to his arrest. We describe the evidence from Monta ez perspective since the sufficiency of the court s entrapment instruction must be judged from this standpoint. United States v. Flores, 968 F.2d 1366, ______________ ______ 1367 (1st Cir. 1992). -2- Lauber kept insisting that Monta ez buy cocaine for her to resell. Her persistence finally paid off after Lauber and the children were expelled from their friend s apartment and Lauber claimed that she would lose her children unless she could raise enough money to buy furniture for an apartment and a car to take the children to school. On October 21, 1994, Monta ez reluctantly agreed to find someone to sell them an ounce of crack the next day so that Lauber could resell it to a friend for a profit.  The next afternoon, Lauber and the undercover agent drove up to the apartment where Lauber s friend was living and waited in the agent s van for the crack to arrive. The seller eventually appeared and went into the apartment. Monta ez emerged a short while later and delivered the crack to the undercover agent. He was arrested two months later.  Monta ez testified at trial that he made no money from the crack sale and that he participated only to help Lauber. II. II. The district court properly instructed the jury that the defense of entrapment has two components: improper government inducement and lack of predisposition. See United ___ ______ States v. Joost, 92 F.3d 7, 12 (1st Cir. 1996); United States v. ______ _____ _____________ Gendron, 18 F.3d 955, 961 (1st Cir.), cert. denied, 115 S. Ct. _______ ____________ -3- 3 654 (1994). Only the court s instruction on the former element is in dispute.2  When charging the jury on improper inducement, the court stated: [I]mproper inducement goes beyond providing an ordinary opportunity to commit a crime. It is typically excessive pressure by the government upon the defendant or the government taking advantage of an alternative noncriminal type of motive. And I think it might help you if I give you some examples of improper inducement. These may be tactics such as intimidation and threats against the defendant's family, calling every day, threatening defendants, engaging in forceful solicitation and dogged insistence until the defendant gives in and capitulates and commits the crime. Now, what I've just said are only a few of course, a few examples that help you understand a government overreaching of its having acted unfairly by employing methods of persuasion or inducement that created substantial risk that such an offense would be committed by a person other than those who are ready to commit. After deliberating for approximately forty-five minutes, the jury sent the court a question, asking If someone is induced by a government informant, is this considered as possible entrapment?  The court responded by repeating its previous instruction on inducement and by stating that Cheryl Lauber was acting as an  ____________________ 2 A defendant is entitled to an entrapment instruction if he produces sufficient evidence of lack of predisposition and improper inducement to raise[ ] a reasonable doubt as to whether he was an unwavering innocent rather than an unwavering criminal. Joost, 92 F.3d at 12, (quoting United States v. _____ ______________ Hern ndez, 995 F.2d 307, 313 (1st Cir.), cert. denied, 510 U.S. _________ ____________ 954 (1993)(citations omitted)). The government does not challenge Monta ez right to an instruction on entrapment. -4- 4 agent of the government . . . . Both times Monta ez asked the court to illustrate how an appeal to sympathy can serve as an improper inducement by using several examples drawn from United ______ States v. Gendron, 18 F.3d at 962.3 The court s failure to use ______ _______ these examples serves as the basis for Monta ez principal argument on appeal. III.  III.  We have repeatedly recognized that a defendant is entitled to an instruction on his theory of defense if sufficient evidence is produced at trial to support the defense and the proposed instruction correctly describes the applicable law. United States v. McGill, 953 F.2d 10, 12 (1st Cir. 1992); United _____________ ______ ______ States v. Zeuli, 725 F.2d 813, 817 (1st Cir. 1984); United States ______ _____ _____________ v. Flaherty, 668 F.2d 566, 581 (1st Cir. 1981). However , the ________ trial court need not repeat the requested instruction verbatim as long as the charge as a whole adequately informs the jury of the viability of the defense. United States v. DeStefano, 59 F.3d _____________ _________ 1, 2-3 (1st Cir. 1995); United States v. Arcadipane, 41 F.3d 1, 8 _____________ __________  ____________________ 3 Monta ez asked the court to include the following examples from Gendron: _______ (4) play[ing] upon defendant's sympathy for informant's common narcotics experience and withdrawal symptoms; (5) play[ing] upon sentiment of one former war buddy for another to get liquor (during prohibition); . . . (7) [telling] defendant that she (the agent) was suicidal and in desperate need of money."  Gendron, 18 F.3d at 961-62 (citations omitted) (quotations _______ omitted).  -5- 5 (1st Cir. 1994). Moreover, the court is not obligated to instruct on every particular that conceivably might be of interest to the jury. DeStefano, 59 F.3d at 3 (citations _________ omitted). Therefore, a trial court s failure to deliver a theory of defense instruction will result in reversal only if (1) the requested instruction correctly describes the applicable law; (2) sufficient evidence is produced at trial to warrant the instruction; (3) the charge actually delivered does not fairly present the defense; and (4) the requested instruction was essential to the effective presentation of the particular defense. United States v. Passos-Paternina, 918 F.2d 979, 984 ______________ ________________ (1st Cir. 1990), cert. denied, 499 U.S. 982, and cert. denied, ____________ ____________ 501 U.S. 1209, and cert. denied, 501 U.S. 1210 (1991). ____________ The government cannot dispute the validity of the proposed instruction in this case as it was drawn directly from our opinion in Gendron. See Gendron, 18 F.3d at 961; see also _______ ___ _______ ________ United States v. Gifford, 17 F.3d 462, 468 (1st Cir. 1994) ______________ _______ (government agent s arm-twisting based on sympathy can constitute improper inducement). Nor can the government successfully argue that the evidence did not warrant the proposed instruction, because a reasonable jury could have concluded from the evidence presented at trial that Lauber improperly induced Monta ez to distribute the crack by claiming that she could lose her children if the sale did not go through. Accordingly, we focus our analysis on the adequacy of the district court s improper inducement charge and the government s claim that any -6- 6 deficiency in the charge did not seriously impair Monta ez  ability to present his defense.  The district court informed the jury that improper inducement can result from either excessive pressure by the government upon the defendant or the government s taking advantage of an alternate non-criminal type of motive. The government contends that since this is undeniably a correct statement of law, see Gendron, 18 F.3d at 961, the court gave the ___ _______ jury enough information to permit it to evaluate Monta ez claim that Lauber entrapped him by an appeal to sympathy. We disagree. Of course, the district court has a great deal of latitude in formulating a charge. But taken as a whole, the examples given were all either coercion examples or involved ___ abstractions ( dogged insistence ) rather far from the examples of inducement by an undue appeal to sympathy, which the defendant expressly requested and which were more pertinent to his defense. By omitting any sympathy examples, the trial court may well have left the jury with the mistaken impression that coercion is a necessary element of entrapment and, in this case, such a misunderstanding could well have affected the outcome. We also reject the government s claim that the court s failure to give the requested instruction did not seriously undermine Monta ez ability to present his defense. Monta ez  only realistic hope of an acquittal was to leave the jury with a reasonable doubt about whether Lauber improperly induced him to -7- 7 participate in the drug deal by appealing to his sympathy for her alleged plight. Since the court s charge failed to otherwise adequately inform the jury of Monta ez theory of defense, the convictions cannot stand.  IV. IV. For the reasons discussed above, we vacate Monta ez  convictions and remand for a new trial.4  ____________________ 4 Since we have vacated the convictions, we do not address the other arguments Monta ez raises on appeal.  -8- 8