# United States Court of Appeals

## For the First Circuit

No. 03-1516

DIANA RAMÍREZ and HUMBERTO RAMÍREZ,

Plaintiffs, Appellants,

v.

NATALIO DEBS-ELÍAS, M.D.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Stahl, Senior Circuit Judge.

Robert A. Rosenblatt, with whom Francisco López-Romo, were on brief, for appellants.
José A. González-Villamil, with whom Eugene F. Hestres and Bird Bird & Hestres, PSC, were on brief, for appellee.

May 12, 2005

**TORRUELLA**, **Circuit Judge**.  Plaintiffs-appellants Diana and Humberto Ramírez appeal from the denial of a motion for mistrial and claim that the district court erred by admitting hearsay evidence during the testimony of an expert witness for the defendant-appellee, Dr. Natalio Debs-Elías, in a medical malpractice trial in the District of Puerto Rico.  After careful review, we find that the district court did not abuse its discretion in denying the motion or in admitting the testimony in question.[1]

## I.  Background

Appellants filed a medical malpractice suit in the District of Puerto Rico, sitting in diversity, against Debs, alleging that he negligently performed surgery to investigate fluid leakage that occurred after stitches were removed following Diana Ramírez's breast augmentation and scar-removal surgery.  Debs

---

[1]  We note that appellants' brief fails to comply with Federal Rule of Appellate Procedure 28(a)(4), which requires a jurisdictional statement identifying the basis for subject-matter jurisdiction, a statement of the relevant facts supporting appellate jurisdiction, dates of filing, and an assertion that the appeal is from a final order or judgment or is otherwise subject to the jurisdiction of this court.  Ramírez's brief states only that jurisdiction exists under 28 U.S.C. § 2255.  The incorrect citation of the federal habeas statute as the source of federal jurisdiction, combined with the various other procedural shortcomings of appellants' filings with this court, go beyond appellants' characterization at oral argument as a mere "technical oversight."  While it is within our authority to take action -- including dismissal as requested by Debs -- in response to the failure to comply with the rules of procedure, see Fed. R. App. P. 3(a)(2), we find it unnecessary because the appeal lacks substantive merit.

performed no diagnostic testing to confirm his suspicion that the leakage came from a ruptured implant prior to performing the second surgery. Appellants claimed that, as a result of the second surgery, the scarring Ramírez had sought to have corrected was actually made worse, and one of her breasts was deformed.

During a six-day trial in February 2003, the appellants presented an expert witness, Dr. José Pérez-Guerri, to establish that the treatment Debs provided fell below the relevant standard of care, a required element for a claim of medical negligence under Puerto Rico law. See Olivers v. Abreu, 101 D.P.R. 209, 226-27, 1 P.R. Sup. Ct. Off'l Translations 293, 313 (1973). To rebut this evidence, the defense called its own expert, Dr. Robert Walton, whose testimony is the subject of this appeal.

During Dr. Walton's direct examination, over repeated objections from the appellants, the defense referred Dr. Walton to Dr. Pérez-Guerri's testimony that the second procedure had caused additional scarring, and asked, "What do you have to say about that?" Dr. Walton responded, "My Spanish is not very good, but there is a term for this, it's called 'disparate.'" "Disparate" is a Spanish term that translates as "nonsense" or "absurdity," New Revised Velázquez Spanish and English Dictionary 268 (1985), although appellants contend that it carries a more negative or disparaging connotation than its English equivalents suggest. The jury burst into laughter at the use of the term, prompting

-3-

appellants' counsel to move for a mistrial on the ground that Dr. Walton had improperly characterized the testimony of Dr. Pérez-Guerri, thus resulting in prejudice to the jury. The district court agreed that Dr. Walton had stepped outside the bounds of his role as witness, and accordingly struck the response from the record, instructed the jury to "totally disregard" the response, and admonished Dr. Walton to adhere strictly to his professional opinion.[2]

After the direct examination resumed, Dr. Walton was asked what the medical literature indicates about scarring caused by a second surgery. Following an objection that the question called for a response that would necessarily be comprised of hearsay, the defense asked Dr. Walton whether he was familiar with the literature on the subject. Over a renewed hearsay objection, Dr. Walton responded by referring to a Dr. Earl Peacock, who, Dr. Walton testified, had published research on the topic of scarring. He then continued, "A long time ago, when surgeons started doing repairs in the fingers," at which point the appellants' counsel objected that the answer was nonresponsive, and then made another hearsay objection and a request to strike the references to Dr. Peacock. The court questioned the witness directly, establishing that he was testifying not from Dr. Peacock's work, but from his

---

[2] In addition, when it instructed the jury at the close of the trial, the district court twice reminded the jurors that they must not consider stricken testimony in their deliberations.

own collective knowledge, including other sources, independent research, and experience with the subject of scarring. Dr. Walton was then permitted to continue his answer, in which he explained that the only clinical evidence or other research that indicated increased scarring when a second surgery is performed soon after a first was specific to surgery performed on the hand.

On February 23, 2003, the jury returned a verdict for the defendant, indicating on a special verdict form that it did not find that Debs violated the standard of care by performing the second surgery. Appellants now argue that the district court abused its discretion in denying the motion for a mistrial as a result of Dr. Walton's characterization of the appellants' expert testimony as "disparate," and in permitting Dr. Walton to present hearsay testimony,[3] in the form of an oral summary of Dr. Peacock's published research. Since we find no abuse of discretion, we affirm the judgment below.

---

[3] Debs suggests that appellants have waived the hearsay issue by failing to address it adequately in their brief. We disagree. While the brief devotes only a few pages to the issue, it adequately describes the relevant facts, which it analyzes in the context of specific rules of evidence and caselaw. Thus, the issue is not raised in the "perfunctory manner" that would result in its waiver. See, e.g., United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir. 1997).

## II.  Analysis

### 1.  Motion for mistrial

Debs does not challenge the district court's ruling that Dr. Walton's description of Dr. Pérez-Guerri's conclusions was an inadmissible characterization of the latter's testimony.  Thus, we have only to consider whether, assuming the evidentiary error, the district court abused its discretion when it opted to strike the testimony and issue a curative instruction instead of declaring a mistrial.  See United States v. Rullán-Rivera, 60 F.3d 16, 18 (1st Cir. 1995) ("A ruling denying a motion for mistrial is reviewed for manifest abuse of discretion . . . .").  Our caselaw on this point is clear:

> When . . . a motion to declare a mistrial has its genesis in a claim that improper evidence came before the jury, the court must first weigh the claim of impropriety and, if that claim is well founded, strike the offending evidence.  Next, unless the court believes that the evidence is seriously prejudicial and that a curative instruction will be an insufficient antidote, the court should proceed with the trial after instructing the jury to disregard the evidence.  Declaring a mistrial is a last resort, only to be implemented if the taint is ineradicable, that is, only if the trial judge believes that the jury's exposure to the evidence is likely to prove beyond realistic hope of repair.

United States v. Sepúlveda, 15 F.3d 1161, 1184 (1st Cir. 1993) (emphasis added); see also Rodríguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 63 (1st Cir. 2005) (applying same standard to civil employment discrimination claim).  We went on to note that

"within wide margins, the potential for prejudice stemming from improper testimony . . . can be satisfactorily dispelled by appropriate curative instructions." Sepúlveda, 15 F.3d at 1184. Moreover, on review, we must presume that jurors will follow a direct instruction to disregard the offending evidence. Id. at 1185. This presumption is only rebutted if "it appears probable that . . . responsible jurors will not be able to put the testimony to one side, and, moreover, that the testimony will likely be seriously prejudicial to the aggrieved party." Id.; see also Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence . . . unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant.") (internal quotation marks and citations omitted).

Put simply, appellants have not come close to rebutting our presumption that the district court's curative instruction to disregard -- issued immediately after Dr. Walton gave the challenged testimony and reinforced during the final jury instructions -- was sufficient to remedy any prejudice caused by Dr. Walton's use of the term "disparate." Appellants argue that they were prejudiced by the undercutting of Dr. Pérez-Guerri's testimony, which was the only evidence submitted to show the

requisite standard of care, yet they have made no satisfactory showing that it was "probable" that the jury would have been unable to put aside Dr. Walton's comment when instructed to do so. On this point, appellants can offer only the observations that the jurors laughed when Dr. Walton referred to Dr. Pérez-Guerri's conclusions as "disparate," and that the statement constituted an assessment of Dr. Pérez-Guerri's credibility. With regard to the former, the jury's outburst preceded the curative instructions, and appears to have been nothing more than a spontaneous response to the use of an unexpected colloquialism in the courtroom. The district court observed this behavior from a much better vantage point than ours, and evidently did not interpret it to be an indication that the jury had been irredeemably biased. We see no reason to question this evaluation.

We also reject appellants' argument that the nature of the erroneous testimony -- a statement that, they argue, impugned their expert's credibility -- required a mistrial. Even if we accept appellants' claim that the challenged testimony impugned their expert's credibility, we still would not think that they were entitled to a mistrial. Contrary to the appellants' reading of our decision in United States v. Shay, we there held that expert testimony directed at credibility need not always be excluded as a matter of law. 57 F.3d 126, 131-32 (1st Cir. 1995) ("[N]o constitutional provision, law, or rule requires the automatic

exclusion of expert testimony simply because it concerns a credibility question."). If such testimony need not always be excluded, it cannot be the case that it must always lead to a mistrial. Under the circumstances, we can find no abuse of discretion in the district court's choice to issue a curative instruction rather than take the drastic step of declaring a mistrial.

**2. Hearsay objection**

We find appellants' hearsay objection equally lacking in merit. They argue that Dr. Walton summarized the published findings of Dr. Peacock, which, if true, would constitute hearsay testimony as defined by Federal Rule of Evidence 801. The hearsay did not, they argue, fall within the "learned treatise" exception of Rule 803(18) because no foundation was laid to establish the reliability of Dr. Peacock's studies. Moreover, they argue, Rule 803(18) permits only the reading of the text of a learned treatise, not an oral summary thereof.[4] We review the district court's evidentiary rulings for abuse of discretion. See, e.g., Rodríguez-Torres, 399 F.3d at 62.

We find that appellants' analysis went off course at the start. It may appear from Dr. Walton's initial response that he

---

[4] Appellants also argue that Dr. Walton's failure to mention the Peacock studies at his pre-trial deposition "compound[ed] the hearsay problem[]," Br. of Appellants at 15, although they cite no legal authority to explain how. We note that appellants have made no separate claim of any discovery violation.

was launching into a summary of Dr. Peacock's published works. However, the district court questioned Dr. Walton extensively on this point prior to letting him continue his answer:

> **THE COURT:** Are you talking now from your own experience, Doctor?
>
> **THE WITNESS:** I'm talking about the concept of intervening early versus intervening late.
>
> **THE COURT:** Are you talking about what the previous writer has indicated or are you talking about other sources of information?
>
> **THE WITNESS:** Other sources of information, it's my collective --
>
> . . .
>
> **THE COURT:** Have you independently written about this?
>
> **THE WITNESS:** Yes, I have, sir. I have written --
>
> **THE COURT:** And researched this subject yourself?
>
> **THE WITNESS:** Yes, I have.
>
> **THE COURT:** And you have had experience on this subject?
>
> **THE WITNESS:** Yes, sir.
>
> **THE COURT:** Very well. You can go ahead and answer.

Trial Tr. at 62-64, Ramírez v. Debs-Elías (D.P.R. Feb. 21, 2003) (No. 01-1034). Based on this exchange, it is clear that the testimony following Dr. Walton's reference to the studies of Dr. Peacock was not a summary thereof, but rather a description, based

-10-

on Dr. Walton's own expertise, of the current state of medical research on the subject of scarring.[5]  While it may be that Dr. Walton's expert opinion was formed, in part, on the basis of the published works of Dr. Peacock and other researchers, scholarly literature is information reasonably relied upon by medical experts.  See Fed. R. Evid. 703; cf. Trull v. Volkswagen of Am., Inc., 187 F.3d 88, 97 (1st Cir. 1999) (finding no abuse of discretion in admission of testimony about the content of a published report based on federally collected data, because, inter alia, it "appear[ed] to satisfy Fed. R. Evid. 703").  We see no abuse of discretion in the district court's admission of Dr. Walton's expert testimony.

### 3.  Sanctions

Finally, Debs has requested that we award costs and attorney's fees to him as a sanction for the filing of a frivolous appeal.  We have imposed sanctions under Federal Rule of Appellate Procedure 38 where "the overwhelming weight of precedent was against appellant's position, where appellant could set forth no facts to support its position, or where, in short, there simply was no legitimate basis for pursuing an appeal."  Kowalski v. Gagne, 914 F.2d 299, 309 (1st Cir. 1990).  With respect to their appeal of

---

[5]  To the extent that the initial statement that a Dr. Peacock had published studies on scarring was itself hearsay, we find that it would have had no prejudicial effect because there was no testimony concerning the content of those studies.  Thus, any potential error in admitting it was harmless.

the district court's refusal to declare a mistrial, appellants failed even to mention our controlling precedent from Sepúlveda in their brief, and have fallen far short of rebutting our presumption that the district court's curative instruction was sufficient to repair any prejudice that resulted from the characterization of Dr. Pérez-Guerri's testimony as "disparate." Appellants' hearsay argument also lacks any legitimate basis in light of the testimony actually admitted. We are therefore inclined to award reasonable attorney's fees, in addition to the costs automatically awarded upon affirmance, against appellants.

## III.  <u>Conclusion</u>

For the reasons stated above, the judgment of the district court is affirmed. In accordance with Federal Rule of Appellate Procedure 38, appellants are ordered to file, within 14 days of the entry of this judgment, a response indicating why attorney's fees should not be awarded to appellee.

**<u>Affirmed</u>**.