# United States Court of Appeals
## For the First Circuit

No. 04-1812

UNITED STATES OF AMERICA,

Appellee,

v.

MARKENO WALTER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and DiClerico, Jr.,* District Judge.

David Shaughnessy, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, were on brief, for
appellee.

January 11, 2006

---

* Of the District of New Hampshire, sitting by designation.

**TORRUELLA, Circuit Judge.** On June 19, 2003, a grand jury sitting in the District of Massachusetts issued a five-count indictment against Markeno Walter, a previously convicted felon. Walter was indicted with evidence from two controlled purchases of firearms arranged by the Western Massachusetts Gang Task Force ("Task Force"), a joint state-federal law enforcement initiative headed by the FBI. The Task Force had set up the purchases between Walter and a cooperating witness for the government named Terry Brown, who also happened to be Walter's cousin.

The first purchase took place on June 28, 2002 in the vicinity of Springfield, Massachusetts. On this occasion, Brown gave Walter $400 in cash and received in return a Lorcin .380 semi-automatic handgun that had its serial number removed, as well as ammunition. Brown was equipped with a recording device and a transmitter during this encounter, so the entire transaction was recorded on tape. The meeting between Brown and Walter was also videotaped by a member of the Task Force who was parked in a surveillance van nearby. The second controlled purchase took place on July 11, 2002 under similar circumstances. Brown, fitted with a recording device and a transmitter and under video surveillance, bought a .38 caliber revolver and ammunition from Walter for $400.

Using the confiscated weapons and ammunition, the audiotapes and videotapes of the two transactions, and the testimony of the various law enforcement officials involved in the

controlled purchases, the government obtained its indictment in June 2003.  The indictment stated that Walter unlawfully possessed firearms and ammunition that had traveled in interstate commerce, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 2, and that Walter also unlawfully possessed a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k).

In November 2003, a trial commenced in the district court during which Brown testified on behalf of the government against Walter.  After three days of deliberation, a jury indicated that it could not reach a unanimous verdict, and a mistrial was declared. In February 2004, a second trial began.  This time, the government did not call Brown as a witness, deciding instead to introduce the audiotapes made during the controlled purchases.  Also, during the course of this second trial, Walter made a motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 on the grounds of entrapment, which the district court denied.  After deliberating, a jury found Walter guilty on all five counts of the indictment.

On May 27, 2004, the district court, using the standards set forth in the Armed Career Criminal Act ("ACCA") and the Sentencing Guidelines, sentenced Walter to a term of imprisonment of 188 months; to a term of five years of supervised release; and to a $500 special assessment.  In this appeal, Walter contests the district court's admission of certain evidence, the court's denial of his motion for a judgment of acquittal, and his sentence.  After

careful consideration, we vacate Walter's sentence and remand for resentencing. On Walter's other claims, however, we affirm the decision of the district court.

## I.  Evidentiary issues

We review the district court's evidentiary rulings for abuse of discretion. Ramírez v. Debs-Elías, 407 F.3d 444, 449 (1st Cir. 2005).  "Within that rubric, however, we consider de novo whether the strictures of the Confrontation Clause have been met." United States v. Vega Molina, 407 F.3d 511, 522 (1st Cir. 2005).

Walter's first claim is that he was deprived of his rights under the Confrontation Clause of the Sixth Amendment when the district court admitted into evidence Brown's taped statements. This argument fails, however, because the statements by Brown that were admitted had a nonhearsay purpose -- namely, they were offered not for the truth of the matters asserted, but to provide context for the admissions of Walter.  The Supreme Court has held in several instances that nonhearsay statements do not implicate the Confrontation Clause.  See United States v. Inadi, 475 U.S. 387, 398 n.11 (1986); Tennessee v. Street, 471 U.S. 409, 414 (1985).

That Brown's statements are to be characterized as "nonhearsay" in this instance is clear.  In several cases, we have held that when statements are offered only to provide context and not for the truth of the matter asserted, those statements are not hearsay.  See United States v. Catano, 65 F.3d 219, 225 (1st Cir.

-4-

1995); <u>United States</u> v. <u>McDowell</u>, 918 F.2d 1004, 1007-08 (1st Cir. 1990). At trial, the taped conversations that were used by the prosecution contained a number of admissions by Walter. Admissions of a party are admissible under Fed. R. Evid. 801(d)(2)(A). Brown's statements merely placed Walter's admissions in context. For example, Brown's question to Walter about whether someone was going to give the "thirty-eight" [i.e., a thirty-eight caliber revolver] to Walter was admitted to provide context to the following response by Walter: "Yeah, it's my gun, n*****![1] What are you talking about?" Similarly, Brown's question to Walter about whether Brown could get "both [guns] . . . for eight hundred" was admitted to provide context to the following response by Walter: "No, I really don't want to sell this one."

In <u>McDowell</u>, the defendant sought to bar the use of certain tapes containing proof that he had aided and abetted several other individuals in the commission of various drug trafficking crimes. After noting that the defendant's own statements could be used against him, we wrote that "a defendant, having made admissions, [cannot] keep from the jury other segments of the discussion reasonably required to place those admissions into context." <u>McDowell</u>, 918 F.2d at 1007. The other parts of the discussion "were properly admitted as reciprocal and integrated utterance(s) to put [the defendant's] statements into perspective

---

[1] Racial epithet omitted.

and make them intelligible to the jury and recognizable as admissions." Id. at 1007 (internal citations and quotation marks omitted). Because such statements were introduced only to provide context, they were not to be considered hearsay. In the instant case, Brown's statements were also not being offered for the truth of the matters asserted but rather served as "reciprocal and integrated utterance(s)," reasonably required to place Walter's admissions into context and "make them intelligible to the jury." Id. (internal quotation marks omitted).

Our characterization of Brown's statements as "nonhearsay" is significant for another reason. It provides an answer to Walter's argument that the admission of Brown's statements is contrary to the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004). In Crawford, the Court held that testimonial hearsay is not admissible under the Sixth Amendment unless the defendant had a prior opportunity for cross-examination and the declarant is unavailable. Walter argues that the district court erred in admitting the audiotapes containing statements by Brown because the government did not establish that Brown was unavailable. In fact, claims Walter, Brown was available, but the government consciously chose not to call him as a witness because he had engaged in egregious sexual misconduct during the time he was acting as a cooperating witness.

-6-

Walter's reliance on Crawford, however, is misplaced. The Supreme Court in that case went to great lengths to distinguish testimonial and nontestimonial hearsay. However, it also noted that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 57 n.9. Crawford therefore does not call into question this Court's precedents holding that statements introduced solely to place a defendant's admissions into context are not hearsay, and as such, do not run afoul of the Confrontation Clause.

Walter's final challenge to the admissibility of this evidence is that the district court erred because it did not issue a limiting instruction advising the jury that it could use Brown's statements only to provide context and not for substantive purposes. See Fed. R. Evid. 105. Walter, however, never asked for such a limiting instruction. As a result, he is not entitled to argue here that the district court's failure to provide a limiting instruction constitutes reversible error. Our precedents have made this clear. See United States v. Murphy, 193 F.3d 1, 5 n.2 (1st Cir. 1999) ("Of course, where a statement is offered for non-hearsay uses, the defendant may be entitled to an instruction limiting its use . . . but only if he asks for it."); United States v. Cintolo, 818 F.2d 980, 999 (1st Cir. 1987) ("Although the trial judge gave no limiting instruction . . . that is likely because the

defendant never requested one.  Having failed in this regard, [the defendant] cannot now be heard to complain of any alleged omission on the part of the district court in this wise."); Staniewicz v. Beecham, Inc., 687 F.2d 526, 531 (1st Cir. 1982) ("[A]ppellant waived any objection to the lack of instruction by his failure to make a timely request for a limiting instruction.").  We therefore hold that Walter was not deprived of his rights under the Confrontation Clause when the district court admitted into evidence Brown's taped statements.

## II.  Entrapment

Walter next contends that the government did not properly refute his claim that he had been entrapped.  As a result, the district court should have granted his motion for a judgment of acquittal.  We review de novo a district court's denial of a motion for a judgment of acquittal.  See United States v. Cruzado-Laureano, 404 F.3d 470, 480 (1st Cir. 2005).

Entrapment is present "when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute."  Sorrells v. United States, 287 U.S. 435, 442 (1932).  Using this definition, it is easy to see that there are two necessary prongs to the entrapment defense: "government inducement of the crime, and a lack of predisposition on the part of the

defendant to engage in the criminal conduct." Matthews v. United States, 485 U.S. 58, 63 (1988); United States v. Gamache, 156 F.3d 1, 9 (1st Cir. 1998); United States v. Rodríguez, 858 F.2d 809, 815 (1st Cir. 1988) (noting that "entrapment cannot occur unless both elements coincide").

"[A] defendant is entitled to a jury instruction on entrapment if there is record evidence which fairly supports the claims of both government inducement of the crime and defendant's lack of predisposition to engage in it." Rodríguez, 858 F.2d at 814. Here, the district court found that an entrapment instruction was merited, telling the jury that the government could succeed on the entrapment issue if it proved beyond a reasonable doubt that either 1) there was no inducement; or 2) that the defendant was predisposed. See id. at 815 (noting that "[o]nce the defense is properly in the case, the government is obligated to prove beyond a reasonable doubt that no entrapment occurred" and that "the defense fails if the jury is persuaded beyond reasonable doubt that either [element] is lacking in a particular case"). Walter argues on appeal that the government failed to carry this burden. As a result, his entrapment defense succeeded, and a judgment of acquittal should have been entered as to all counts. Alternatively, he argues that the district court should have found as a matter of law that the government had failed to disprove inducement. Therefore, the inducement prong of the entrapment

-9-

defense was satisfied, and the district court should have withdrawn that issue from the jury's consideration as he requested.

In evaluating Walter's claims, we must examine the two prongs of the entrapment defense. First, we look at inducement. Inducement may be found where the government goes beyond providing an opportunity for the crime's commission and "creates a risk of causing an otherwise unwilling person to commit the crime." Gamache, 156 F.3d at 9; see also United States v. Gendron, 18 F.3d 955, 961 (1st Cir. 1994) (inducement "consists of an 'opportunity' plus something else -- typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive.").

Walter notes that exploitation of sympathy can amount to improper inducement, pointing to the following decisions: Sorrells, 287 U.S. at 441 (sympathy among war veterans); Sherman v. United States, 356 U.S. 369, 373 (1958) (playing upon defendant's sympathy for informant's common narcotics experience and withdrawal symptoms); and United States v. Montañez, 105 F.3d 36, 38-40 (1st Cir. 1997) (sympathy for family circumstances). He argues that the government exploited his sympathy by having Brown, his cousin, claim that he was in danger from gang members and that he needed guns for personal protection. In other words, Brown -- and by extension, the government -- induced Walter to procure guns by playing on his family sympathies and concerns for Brown's safety.

-10-

As proof that Walter was motivated by these factors, he points to an exchange on the June 28 tape in which Brown states, "I been having some problems with . . . those gang motherfuckers," to which Walter replies, "You ain't gonna have no problems now." Walter further argues that the only admissible evidence pertaining to the issue of inducement came from his own testimony and the tapes, both of which supported his claims of improper government inducement. He then cites to a number of cases that he claims, taken together, stand for the proposition that a defendant's own unrebutted testimony is sufficient to establish inducement as a matter of law.

In Masciale v. United States, 356 U.S. 386 (1958), the Supreme Court noted that even if a defendant's testimony is not disputed by a government witness, the defendant is not necessarily entitled to an instruction of entrapment as a matter of law because the jury might choose to disbelieve the defendant's testimony. Id. at 388. That the jury could conceivably disbelieve Walter in this instance is entirely within the realm of possibility. There was ample evidence upon which a reasonable jury could have chosen to disbelieve Walter's argument that the only reason he obtained firearms for Brown was because Brown had taken advantage of Walter's family sympathies. For example, the jury heard testimony from Walter that, although he provided Brown with the .380 caliber firearm on June 28, 2002, he brought a .25 caliber firearm with him on that day for protection from Brown "b]ecause I didn't want him

-11-

to -- I couldn't put that gun in his hand and just let him take it from me. If he puts bullets in the gun he could have just took it from me, you know what I'm saying." Given Walter's testimony that he saw it necessary to arm himself for his meeting with Brown, a reasonable jury could have chosen to disbelieve Walter's testimony that the only reason he came into the possession of firearms was for the altruistic purpose of helping Brown. Therefore, Walter's alternative argument -- that inducement was established as a matter of law and that therefore that issue should have been withdrawn from the jury's consideration -- fails.

In addressing Walter's primary argument that the government failed to carry its burden of proving that no entrapment occurred, we again note that the government's burden is met if it proves beyond a reasonable doubt that either element of the defense, inducement or lack of predisposition, fails. Rodríguez, 858 F.2d at 815. Focusing on the predisposition prong, we think that the government met its burden of proving that the defendant was predisposed to possess the guns in question. The recorded conversations between Walter and Brown contained numerous admissions by Walter that show he was predisposed to possess handguns and ammunition. The jury, for example, heard recorded statements in which Walter mentioned that he knew how to file the serial number off of a firearm and that he knew how to clean a .38 caliber revolver. We have previously held that evidence of

predisposition may be inferred from conversations in which a defendant displays knowledge or experience in the criminal activity under investigation. See United States v. Panet-Collazo, 960 F.2d 256, 259-60 (1st Cir. 1992) (in tape-recorded conversations, defendant stated that he had "worked with cocaine a lot"); United States v. Tejeda, 974 F.2d 210, 218 (1st Cir. 1992) (informant testified that defendant talked about going rate of cocaine). Given Walter's admissions, a reasonable jury could easily have decided that Walter was predisposed to possess handguns and ammunition, including a handgun with an obliterated serial number. The government therefore satisfied its burden and properly refuted Walter's claim that he had been entrapped. As a result, we hold that the district court was correct to deny Walter's motion for a judgment of acquittal.

### III.  Sentencing

Walter's final challenge is to his sentence.  Walter was sentenced pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The ACCA establishes a 15-year (180-month) mandatory minimum sentence for any person who violates 18 U.S.C. § 922(g) and has three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  The district court found that Walter satisfied this description.  Walter was also subjected to a further enhancement of his sentence under the then-

mandatory United States Sentencing Guidelines § 4B1.4. The mandatory minimum of the ACCA, combined with the application of the Sentencing Guidelines, resulted for Walter in a total sentencing range of between 188 and 235 months. The district court opted for the low end of this range and settled on a sentence of 188 months. Walter here contests both the ACCA and Sentencing Guidelines portions of his sentence.

### A. ACCA

As to Walter's sentencing under the ACCA, his eligibility under the statute was dependent on three prior convictions for a "violent felony" or "serious drug offense," "committed on occasions different from one another." 18 U.S.C. § 924(e). The district court sentenced Walter as an Armed Career Criminal based on his three prior drug convictions and a manslaughter conviction. These four crimes, mentioned in the presentence report ("PSR"), were considered the necessary ACCA predicates. Walter contends, however, that the district court misused the PSR to determine his ACCA status. Had the district court correctly used the PSR, he claims, it would have found only two ACCA predicates, rendering § 924(e) inapplicable.

Walter bases his argument on the Supreme Court's opinions in Taylor v. United States, 495 U.S. 575 (1990), and United States v. Shepard, 125 S. Ct. 1254 (2005). In Taylor, the Supreme Court held that, in determining whether a crime constitutes a violent

felony under the ACCA, a sentencing court must take "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Taylor, 495 U.S. at 600. In Shepard, the Court held that "Taylor's reasoning controls the identification of . . . convictions following pleas, as well as convictions on verdicts." Shepard, 125 S. Ct. at 1259. As a consequence, when determining whether a prior conviction resulting from a guilty plea is a violent felony for purposes of the ACCA, a court is limited to an examination of the language of the statute of conviction, "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant . . . or to some comparable judicial record of this information." Id. at 1263.

In light of these holdings, Walter argues that the district court's use of the PSR was incorrect. In particular, he points to two of the drug offenses that were counted by the district court as ACCA predicates. He argues that two of these offenses were disposed of on the same day, and it is only from the PSR's review of the pertinent police reports -- in violation of Taylor and Shepard -- that the court concluded that the two offenses were committed on separate occasions. If these two crimes were not in fact committed on separate occasions -- a question that cannot be answered based solely on the record analysis permitted

-15-

under Shepard -- then they only count as one predicate, bringing the total to three.

Walter then combines this argument with one stating that his manslaughter conviction should also be disqualified as an ACCA predicate because, under the record analysis mandated by Taylor and Shepard, it was impossible for the district court to determine whether his manslaughter conviction qualified as a "violent felony" under the ACCA. Normally, a court is required to "look only to the fact of conviction and the statutory definition of the prior offense" to determine whether it is a predicate offense under the ACCA. Taylor, 495 U.S. at 602. However, in this case, Walter notes that "the basis for the court's sentence was a presentence report that 1) did not include the source of its information concerning the prior conviction; 2) did not include official copies of those prior convictions; and 3) did not include citations to specific criminal statutes." Specifically, Walter states that "[t]he PSR identifies a 'manslaughter' conviction but does not cite to a statute, nor does it say whether the conviction was for involuntary or voluntary manslaughter." Walter notes that "[t]here is a single manslaughter statute in Massachusetts" which "covers both voluntary and involuntary manslaughter," including conduct involving recklessness. Since, Walter argues, involuntary manslaughter includes offenses which should not be considered "violent felonies," his manslaughter conviction cannot be

considered a predicate offense under the ACCA.  Thus, if Walter's two arguments -- about his drug convictions and his manslaughter conviction -- have merit, there are only two ACCA predicates, and § 924(e) is rendered inapplicable.

Even assuming that Walter is correct about the use -- or rather, misuse -- of his drug convictions, we believe that the district court correctly determined that Walter's manslaughter conviction qualified as an ACCA predicate.  Because Walter did not raise this issue below, our review is for plain error.  "To prevail under this standard, [Walter] must show that (1) an error occurred, (2) the error was clear or obvious, (3) the error affected his substantial rights, and (4) the error also seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Wiggin, 429 F.3d 31, 38 (1st Cir. 2005) (citing United States v. Olano, 507 U.S. 725, 732, 734 (1993)).

Under the ACCA, a prior conviction is for a "violent felony" if the prior offense was "punishable by imprisonment for a term exceeding one year . . . [and] . . . involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e).  The Massachusetts manslaughter statute provides:

> Whoever commits manslaughter shall, except as hereinafter provided, be punished by imprisonment in the state prison for not more than twenty years or by a fine of not more than one thousand dollars and imprisonment in jail or a house of correction for not more

-17-

than two and one half years. Whoever commits
manslaughter while violating the provisions of
sections one hundred and one to one hundred
and two B, inclusive, of chapter two hundred
and sixty-six shall be imprisoned in the state
prison for life or for any term of years.

Mass. Gen. Laws ch. 265, § 13 (2005). The statute does not
distinguish between voluntary and involuntary manslaughter;
therefore, both offenses are punishable by imprisonment for a term
exceeding one year.

Furthermore, under Massachusetts common law, both
involuntary and voluntary manslaughter appear to "involve conduct
that presents a serious potential risk of physical injury to
another." "Involuntary manslaughter is an unintentional killing
resulting from wanton and reckless conduct or a battery not
amounting to a felony which the defendant knew or should have known
endangered human life." Commonwealth v. DeMarco, 830 N.E.2d 1068,
1073 (Mass. 2005) (internal quotation marks omitted).
"[I]nvoluntary manslaughter involves a high degree of likelihood
that substantial harm will result to another." Commonwealth v.
Lyons, 828 N.E.2d 1, 6 (Mass. 2005) (internal quotation marks
omitted). "Voluntary manslaughter is an unlawful killing which
occurs in circumstances which negate the element of malice."
Commonwealth v. Squailia, 706 N.E.2d 636, 642 (Mass. 1999).[2]

---

[2] Notably, other circuits have found that manslaughter constitutes
a violent felony for purposes of the ACCA. See United States v.
Sanders, 97 F.3d 856, 859-60 (6th Cir. 1996) (holding that
conviction under Ohio's involuntary manslaughter statute is a

-18-

Thus, manslaughter, under Massachusetts law, is a violent felony within the meaning of the ACCA as a matter of law. In light of this conclusion and both parties' arguments on appeal that the Massachusetts manslaughter statute applies in Walter's case, Walter is unable to show any "plain error" by the district court. Given this holding, the three required ACCA predicates were present. We therefore decline to address the merits of Walter's alternative argument -- that it was impossible for the district court to determine whether two of his drug convictions were committed on different occasions -- and hold that the ACCA portion of Walter's sentence was correct.

### B. Sentencing Guidelines

As to the Sentencing Guidelines portion of his sentence, Walter points out that he was sentenced prior to the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005). Since the district court sentenced him under a mandatory Guidelines regime, he argues that he is entitled to resentencing in

---

"violent felony" conviction under the ACCA because it "'involves conduct that presents a serious potential risk of physical injury to another.'"); United States v. Williams, 67 F.3d 527, 528 (4th Cir. 1995) (involuntary manslaughter under South Carolina's involuntary manslaughter statute is a "violent felony" under the ACCA because that statute proscribes "[c]onduct that involves 'the reckless disregard for the safety of others' (and which results in someone's death) [and thus] clearly presents a 'serious potential risk of physical injury to another'"); United States v. Lujan, 9 F.3d 890, 892 (10th Cir. 1993) (concluding that manslaughter under California law is a "violent felony" under the ACCA because it has the element of the use, attempted use, or threatened use of physical force).

-19-

conformance with Booker.  See United States v. Antonakopoulos, 399

F.3d 68, 75 (1st Cir. 2005) ("The Booker error is that the

defendant's Guidelines sentence was imposed under a mandatory

system.").  In evaluating this argument, we first note that

Walter's claim of Booker error is unpreserved.  In Antonakopoulos,

we stated that a Booker error is preserved only "if the defendant

below argued Apprendi or Blakely error [referring to Apprendi v.

New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542

U.S. 296 (2004)] or that the Guidelines were unconstitutional."

Antonakopoulos, 399 F.3d at 76.  Walter did neither in this case

and acknowledges that his claim of Booker error here is

unpreserved.

We therefore review Walter's Booker claim for plain

error.  Id. at 75.  In Antonakopoulos, we stated what is required

in plain error review:

> [F]or the court of appeals to notice and
> correct an error not objected to in the
> district court, there must be an "error" that
> is "plain" and that "affects substantial
> rights." If those three factors are all met,
> the court of appeals then has discretion to
> correct the error only if it seriously affects
> the fairness, integrity or public reputation
> of judicial proceedings.

Id. at 77 (internal quotation marks and citations omitted).  We

also noted that the first two prongs of the test are automatically

satisfied whenever the defendant's Guidelines sentence was imposed

under a mandatory Guidelines system. Id.  Given that Walter was

-20-

sentenced under a mandatory Guidelines regime, we turn our attention to the remaining two prongs of the test -- that the error affect substantial rights, and that discretionary action by this court is necessary because the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

To satisfy these final two prongs of the plain error test, we have held that "the defendant must point to circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new 'advisory Guidelines' Booker regime." Id. at 75. This is not a heavy burden. In United States v. Heldeman, 402 F.3d 220 (1st Cir. 2005), we stated that "we are inclined not to be overly demanding as to proof of probability where, either in the existing record or by plausible proffer, there is reasonable indication that the district judge might well have reached a different result under advisory guidelines." Id. at 224.

We believe that Walter has satisfied this burden here. He points to how the district court judge "unequivocally signaled his displeasure with the severity of the mandatory sentencing enhancements he felt obliged to apply." In United States v. Jiménez, 419 F.3d 34 (1st Cir. 2005), we encountered a defendant who made a nearly identical showing. We rejected the defendant's claim, however, noting that although the district judge made a number of comments that indicated that he "might have imposed a

-21-

more lenient sentence if the Guidelines had been advisory at that time," the judge also made an explicit statement that even if he had the discretion to depart downwards given the defendant's "heartbreaking" family circumstances, he would not exercise that discretion. Id. at 46. Such a statement, we held, was fatal to the defendant's Booker claim.

In this case, however, such a statement by the sentencing judge was completely absent. Here, Judge Ponsor -- the same district judge as in Jiménez -- only made statements indicating that he would likely have imposed a more lenient sentence if given the option to do so. He stated:

> It's a very grim responsibility to have to consider the appropriate sentence in this case because of the impact of the Sentencing Guidelines and the mandatory sentences in this case, a mandatory sentence in this case . . . It's a terribly, terribly onerous sentence and I don't think there's anything to be said about it other than that it is an extraordinarily heavy sentence to be looking at in this case. . . . But as I understand it, and I've looked at the presentence report very carefully, that the court is without discretion based upon the Sentencing Guidelines and the statutes passed by Congress to impose a sentence below the 188 to 235 month range. That is my understanding of the limitations of my discretion here this afternoon. . . . I know that the defendant has had a difficult life in a number of ways, particularly being raised by his grandmother and his aunt. . . . I know that he has a relationship with a woman right now and actually had been not having any trouble since 1995 or so, or '96 or so. . . . On the other hand, he has these prior convictions and the jury made its decision that he was guilty of

-22-

> these crimes, and I think my responsibility is
> to impose the sentence at the very lowest end
> of the guideline range.

In other words, the district judge commented that Walter's sentence was "terribly, terribly onerous" and "extraordinarily heavy" without providing any sort of limiting statement as he did in Jiménez.

The government argues that in making these statements about the weightiness of the sentence, the district judge was referring to the sentence as a whole, not simply the eight-month difference between the 180-month mandatory minimum under the ACCA and Walter's ultimate sentence of 188 months. Although the government is technically correct in that the comments of Judge Ponsor relate to the severity of the sentence as a whole, we think it likely -- from the tenor of the judge's comments, his overt sympathy for the defendant's circumstances, and the absence of any statement that he would withhold his exercise of discretion in this case -- that he would have sentenced Walter more leniently had he not been bound by the Guidelines. For example, he might only have imposed the mandatory minimum under the ACCA and imposed no additional sentence under the Guidelines. Alternatively, he may have added a few additional months to the mandatory minimum, but not so many months that the total sentence would extend to 188 months. Regardless of whether Judge Ponsor actually would have taken any of these steps, Walter now at least deserves to be

sentenced by a judge who has the latitude to make such sentencing adjustments if he so desires. As we noted in <u>Heldeman</u>, "it will be easy enough for the district judge on remand to say no with a minimum expenditure of effort if the sentence imposed under the pre-<u>Booker</u> guidelines regime is also the one that the judge would have imposed under the more relaxed post-<u>Booker</u> framework." <u>Heldeman</u>, 402 F.3d at 224. We therefore vacate Walter's sentence and remand for resentencing.

### IV. Conclusion

For the reasons set forth above, we vacate the decision of the district court regarding Walter's sentence and remand for further proceedings consistent with this opinion. The judgment of the district court is affirmed as to Walter's other claims.

**<u>Affirmed in part, and vacated and remanded in part</u>**.