**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 05-1597

UNITED STATES OF AMERICA,

Appellee,

v.

LENARD GIBSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Selya, Lipez, and Howard,
Circuit Judges.

Aziz Safar and Safar Law Office, on brief for appellant.
Donald C. Lockhart, Assistant United States Attorney and
Robert Clark Corrente, United States Attorney, on brief for
appellee.

May 23, 2006

**PER CURIAM**.  After a two-day jury trial, Lenard Gibson was found guilty of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 924(g)(1) and 924(e).  On appeal, Gibson challenges the district court's denial of his motion for a new trial.  Specifically, Gibson asserts that the government failed to disprove his entrapment defense.

## I.

We recite the facts relevant to Gibson's entrapment defense as they are reflected in the record.  Kenneth Vieira was a federally licensed dealer of firearms and proprietor at a gun store located in Riverside, Rhode Island.  On September 6, 2004, Gibson entered Vieira's store and inquired about gun types and, in particular, how he could purchase a Glock pistol.  Vieira showed Gibson how to disassemble and clean the pistol; thereafter, Gibson practiced taking the gun apart.  Subsequently, Vieira informed Gibson of the requirements for purchasing a gun, including two sets of criminal background checks.  Gibson asked if it was permissible for another person to purchase a gun on his behalf, prompting Vieira to ask Gibson if there was a problem.  Gibson told Vieira that he was a felon, whereupon Vieira told Gibson he was prohibited from buying a gun and that he was not even allowed in the store.  Vieira informed Gibson that he would have to speak to "his boss".  Gibson gave Vieira a $100 cash deposit to ensure that Vieira did not sell the Glock pistol to another buyer.

-2-

Immediately after Gibson left the store, Vieira reported the incident to an ATF agent. At the agent's behest, Vieira called Gibson on the following day to inform him that the purchase could go forward. Gibson returned to the store that same day, and in the presence of Vieira and the agent (who was posing as an employee), Gibson paid the outstanding balance for the Glock pistol, approximately $400, and practiced disassembling the gun. Gibson reiterated that a friend, Randi Scott, would complete the necessary paperwork for purchase of the Glock.

Later that same day, Gibson returned with Scott, who began filling out the paperwork. In the meantime, Gibson selected another firearm he wished to purchase, a .38 semiautomatic pistol. He told Vieira that he wanted to purchase this gun and asked how the gun functioned. After Scott finished the paperwork, Vieira informed them that he would contact them when the guns were ready for pick up.

Around September 14, the ATF agent instructed Vieira to call Gibson to tell him that the firearms would be ready on September 16. Vieira called Gibson, who informed him that he would return to the store on the morning of the 16th. When Gibson failed to appear by the afternoon of the 16th, Vieira called Gibson (acting on instructions from the ATF agent) to find out when he was coming. Gibson explained that Scott was unavailable to pick up the guns and asked whether he could pick up the guns himself. After

-3-

consulting with the ATF agent, Vieira informed Gibson that this would be acceptable.  Gibson arrived at the store approximately 30 minutes later.  There, Gibson took possession of the two guns, and he also purchased two boxes of ammunition and other accessories. Gibson paid a total of $650 in cash, leaving a balance of $75, which he agreed to pay within a week.  On leaving the store with his purchases, Gibson was arrested.

## II.

A district court may grant a motion for a new trial if the jury "reached a seriously erroneous result."  United States v. Rivera Rangel, 396 F.3d 476, 486 (1st Cir. 2005) (internal citations and quotation marks omitted).  Review of a district court's "denial of a motion for a new trial is for manifest abuse of discretion."  United States v. Glenn 389 F.3d 283, 287 (1st Cir. 2004).

We have held that there is entrapment when:

> the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute. Using this definition, it is easy to see that there are two necessary prongs to the entrapment defense: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct.

United States v. Walter, 434 F.3d 30, 35 (1st Cir. 2006).  Once a defendant introduces a defense of entrapment, "the government [can] succeed on the entrapment issue if it prove[s] beyond a reasonable

doubt that either 1) there was no inducement; or 2) that the defendant was predisposed." Id.

Here, the government prevailed in defeating Gibson's entrapment defense at trial by presenting overwhelming evidence of predisposition. A reasonable jury could conclude that Gibson: (1) voluntarily visited the store for the first time; (2) was determined to purchase a firearm despite the proprietor's concerns; (3) left a deposit on one firearm; (4) raised the idea of using a "straw" buyer; (5) showed interest in a second gun; (6) provided the "straw" buyer; (7) asked for demonstrations of how to disassemble and maintain the firearms, and practiced in the gun store; and (8) using a substantial cash payment, purchased both firearms.

Gibson asserts that on the day alleged in the indictment, September 16th, he had a "change of heart" and testified to that effect during the trial -- in essence asserting that he lacked the necessary predisposition. He claims that he would not have taken possession of the firearms on that day except for the inducement on the part of the government. Given the evidence adduced at trial, a reasonable jury was certainly free to reject his testimony and his "change of heart" story.

In summary, there was no discernible error by the district court, much less a manifest abuse of discretion, in its denial of Gibson's motion for a new trial.

-5-

**Affirmed.**