**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 18-1303

---

CEVDET AKSUT VE OGULLARI KOLL.STI,
Appellant

v.

ROBIN A. CAVUSOGLU; HINCKLEY ALLEN & SNYDER LLP; CNC WAREHOUSING LLC; MUNEVVER CAVUSOGLU; GULSUN CAVUSOGLU; AHMET HAMDI CAVUSOGLU; CELIL CAVUSOGLU; HUSEYIN T. CAVUSOGLU;AMERICAN PISTACIO COMMODITY CORP., DBA Sunrise Commodities; GALIP UNSALAN; ANDREW ROSEN; DAVID COTTAM; MORDY DICKER;HGC COMMODITIES CORP.; NORTHEAST IMPORTS INC.; CNC TRADING DISTRIBUTION AND WAREHOUSING INC.; SONA TRADING LTD.; LINDEN PACKAGING CORP.; EFE INTERNATIONAL, INC.; EFE SPECIALTY MARKET, INC.; ZEYNO TRUCKING, INC.; APC COMMODITY CORP.; UNSALAN PETROL DIS TACARET; CECIL ITHALAT ITHRACAT VE TICARET LTD.STI

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 2:14-cv-03362)
District Judge: Hon. William J. Martini

---

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 14, 2018

---

Before: SHWARTZ, BIBAS, and FUENTES, Circuit Judges.

(Filed: November 16, 2018)

OPINION*

SHWARTZ, Circuit Judge.

Plaintiff Cevdet Aksut Ve Ogullari Koll.Sti ("Cevdet") appeals: (1) the District Court's orders (a) dismissing its Racketeer Influenced and Corrupt Organizations Act ("RICO") claims and (b) granting Defendants' motions for summary judgment on Cevdet's remaining claims, all under New Jersey law; and (2) the Magistrate Judge's order denying Cevdet's motions to reopen the discovery period and compel discovery. For the reasons that follow, we will affirm.

I

This litigation is preceded by three separate actions. All of these actions surround Huseyin Cavusoglu's purchase—through a shell company called HGC Commodities Corp. ("HGC")—of $1.125 million worth of dried apricots, figs, and pine nuts from Cevedet. HGC and Cavusoglu failed to pay Cevdet for the goods, prompting Cevdet to sue Cavusoglu and HGC to recover the money owed. Cevdet and Cavusoglu reached a settlement, but Cavusoglu defaulted and a judgment was issued against HGC for $1,123,500. Cevdet then brought suit for fraud against Cavusoglu personally. A jury found Cavusoglu liable and a $1,187,722.73 judgment was entered against him. Cevdet

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

claims that while these actions were pending, Cavusoglu stripped HGC of all assets to prevent Cevdet from collecting its judgment.

Cavusoglu sold some of Cevdet's goods to American Pistachio Commodity Corp. d/b/a Sunrise Commodities ("Sunrise"), through its principals Andrew Rosen and David Cottman (collectively, "the Sunrise Defendants").[1] At some point, a company associated with Cavusoglu sued Sunrise for failure to pay the full amount for certain goods. The parties settled their claims ("Sunrise Settlement"). Under the settlement, Sunrise paid Cavusoglu $500,000. The funds were wired to Cavusoglu's counsel Hinckley Allen & Snyder LLP ("Hinckley Allen"). Hinckley Allen disbursed some of the funds to itself for legal services.

In 2014, Cevdet filed this action against the Sunrise Defendants, Cavusoglu's family, Hinckley Allen, and a former officer of Sunrise, Mordy Dicker, among others, alleging violations of New Jersey and federal RICO, N.J.S.A. 2C:41-4, et. seq., and 18 U.S.C. § 1961, et. seq., respectively; the Uniform Fraudulent Transfer Act ("UFTA"), N.J.S.A. 25:2-25, et seq.; aiding and abetting of conversion, fraud, and breach of fiduciary duty; civil conspiracy; and accounting.

The District Court dismissed Cevdet's RICO claims against Hinckley Allen, the Sunrise Defendants, and Dicker. The Court held that Cevdet failed to plead a predicate pattern of racketeering activity and continuity to state a RICO claim against Hinckley Allen, Cevdet Aksut Ve Ogullari Koll. Sti v. Cavusoglu, Civ. No. 14-3362, 2016 WL

[1] Cavusoglu also provided space in a rented warehouse to Sunrise, among other services, to facilitate Sunrise's business of importing food products.

1407745, at *2 (D.N.J. Apr. 11, 2016), and that Cevdet failed to plead a domestic injury as required by RICO to state a claim against Sunrise and Dicker, see Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu, 245 F. Supp. 3d 650, 658-60 (D.N.J. 2017); Dkt. No. 151.

After discovery closed, the Sunrise Defendants and Hinckley Allen requested leave to file motions for summary judgment on the remaining claims. In response, Cevdet filed a motion to extend the discovery period and compel discovery. Cevdet Aksut Ogullari Koll, STI v. Cavusoglu, Civ. No. 14-3362, 2017 WL 3013257, at *2-3 (D.N.J. July 14, 2017). The Magistrate Judge denied Cevdet's motion, finding that Cevdet failed to diligently pursue discovery and that it only raised these issues after the discovery period ended. Id. at *4-6. Cevdet did not appeal this order to the District Court.

Defendants thereafter filed summary judgment motions. The District Court awarded Hinckley Allen summary judgment on the remaining counts and denied Cevdet's cross-motion for summary judgment, finding no factual support for Cevdet's allegations that Hinckley Allen was liable under the UFTA or for civil conspiracy for its role in the Sunrise Settlement and the transfer of the settlement proceeds. Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu, Civ. No. 14-3362, 2018 WL 482453, at *5, *7-8 (D.N.J. Jan. 19, 2018).

The District Court also granted Dicker's motion for summary judgment, finding that Dicker had left Sunrise before the alleged fraud occurred and thus could not have participated in it. Cevdet Aksut Ogullari Koll. Sti. v. Cavusoglu, Civ. No. 14-3362, 2018

WL 585542, at *3 (D.N.J. Jan. 29, 2018). Finally, the Court granted the Sunrise Defendants' motion for summary judgment, finding that Cevdet presented no facts to refute their explanation for the activities Cevdet labeled as fraudulent conduct. Cevdet Aksut Ogullari Koll. Sti. v. Cavusoglu, Civ. No. 14-3362, 2018 WL 585541, at *4 (D.N.J. Jan. 29, 2018).[2]

Cevdet appeals.

## II[3]

### A

We will first review Cevdet's assertion that the District Court erred in concluding that it did not suffer a domestic injury as required under RICO, 18 U.S.C. § 1964(c), and dismissing its RICO claim.[4]

RICO creates a private right of action for injuries to a person's business or property. 18 U.S.C. § 1964(c). While "RICO applies to some foreign racketeering

---

[2] The District Court also ruled that Cevdet abandoned its accounting claim. Cevdet, 2018 WL 482453, at *5 (Hinckley Allen); Cevdet, 2018 WL 585542, at *3 (Dicker); Cevdet, 2018 WL 585541, at *4 (Sunrise).

[3] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1332, 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[4] We conduct plenary review of the District Court's order granting a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). We apply the same standard as the District Court and must determine whether the complaint, construed "in the light most favorable to the plaintiff," Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (internal quotation marks and citation omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012). A claim "has facial plausibility when the pleaded factual content allows the court to draw the

activity," "[s]ection 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries." RJR Nabisco, Inc. v. European Cmty., 136 S. Ct. 2090, 2103, 2111 (2016).

RICO allows recovery for domestic injuries to both tangible and intangible property. Thus, we must identify where the property is harmed. The harm to tangible property is deemed to occur where the property is located. So, a plaintiff suffers a domestic injury to tangible property "if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad." Bascunan v. Elsaca, 874 F.3d 806, 820-21 (2d Cir. 2017).

However, where "harm to intangible business interests is alleged[,] [t]he location of such injuries simply cannot be identified with the same geographic certainty that is endemic in the very concept of tangible property." Humphrey v. GlaxoSmithKline PLC, 905 F.3d 694, 703-04 (3d Cir. 2018). To determine the location of an injury to intangible property, we "must focus primarily upon where the effects of the predicate acts were experienced." Id. at 707. To this end, we weigh a number of factors, including:

> where the injury itself arose; the location of the plaintiff's residence or principal place of business; where any alleged services were provided; where the plaintiff received or expected to receive the benefits associated with providing such services; where any relevant business agreements were entered into and the laws binding such agreements; and the location of the activities giving rise to the underlying dispute.

Id. No one factor is "presumptively dispositive." Id.

---

reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Thus, to determine whether Cevdet suffered a domestic injury for RICO purposes, we must determine: (1) the nature of the injury Cevdet claims to have suffered due to Defendants' actions; (2) whether the injured property is tangible or intangible; and (3) where the injury occurred.

First, Cevdet describes its injury as the damage to its $1.1 million judgment against Cavusoglu caused by Defendants' transfer of funds that shielded Cavugolu's assets from collection by creditors like Cevdet.[5] For the purposes of this inquiry, we assume that the inability to collect on the judgment is "a concrete financial loss" that is cognizable under RICO. In re Avandia Mktg., Sales, Practices & Prod. Liab. Litig., 804 F.3d 633, 638 (3d Cir. 2017) (citations omitted).

Second, "[a] judgment is property." Tatung Co., Ltd. v. Shu Tze Hsu, 217 F. Supp. 3d 1138, 1156 (C.D. Cal. 2016) (quoting Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 352 (9th Cir. 1999)). "As much as a judgment or a cause of action is a piece of property, it does not have a 'physical existence.' The property at issue here, then, is an 'intangible asset[.]'" Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp., 885 F.3d 1090, 1094 (7th Cir. 2018) (citing Intangible Asset, Black's Law Dictionary (9th ed. 2009)).

---

[5] The District Court aptly described Cevdet's injury to the judgment as a derivative or "downstream effect" of the underlying fraudulent transactions which harmed his business in Turkey. Cevdet, 245 F. Supp. 3d at 658. Moreover, to the extent Cevdet's complaint alleged different injuries—injury to his judgment and injury to his business—each injury occurred in Turkey for the reasons stated herein. Bascunan, 874 F.3d at 818 (stating a court "should separately analyze each injury to determine whether any of the injuries alleged are domestic").

Third, applying the Humphrey factors, we conclude that Cevdet's injury is not domestic for the purposes of § 1964(c). Although Cevdet has a judgment against Cavusoglu under United States law, Cevdet is a Turkish company with its principal place of business in Turkey, and Cevdet experiences the loss from its inability to collect on its judgment in Turkey.[6] Because its injury is not felt in the United States, Cevdet has not suffered a domestic injury and is therefore foreclosed from stating a RICO claim, and the District Court properly dismissed it.[7]

B

Cevdet next argues that the District Court erred in granting summary judgment to Hinckley Allen, the Sunrise Defendants, and Dicker on the remaining claims. We need not address any of these arguments on appeal because Cevdet has not preserved them.

To preserve a claim on appeal, an appellant must comply with Federal Rule of Appellate Procedure 28. See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 145 (3d Cir. 2017). Pursuant to Rule 28, an appellant's brief must include the

---

[6] Cevdet's injury is akin to the injury described in Tatung, where the plaintiff claimed that he was unable to collect a United States arbitration award or the judgment confirming the award "because, it alleges, its creditor and many others engaged in a RICO conspiracy to render the creditor an empty shell." 217 F. Supp. 3d at 1156. In that case, however, unlike Cevdet, the "[p]laintiff maintain[ed] a 'hub' in the United States." Id. at 1155. Additionally, the court focused on where the predicate acts underlying the RICO claim took place or where the defendants targeted their conduct, id. at 1156-57, whereas we have adopted an approach focusing on where the effects of the defendants' conduct were felt, Humphrey, 905 F.3d at 707. Thus, Tatung is inapposite.

[7] Because we conclude Cevdet has not alleged a domestic injury, we need not consider its appeal of the District Court's order dismissing the RICO claims against Hinckley Allen for failure to establish a pattern of racketeering, even assuming the argument was preserved, see infra section II.B.

"appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). "[W]e have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing." Barna, 877 F.3d at 145 (citations omitted). Likewise, we will not consider arguments that a party seeks to incorporate by reference to a submission to the district court. See Norma v. Elkin, 860 F.3d 111, 130 (3d Cir. 2017) ("[A]n attempt to incorporate by reference arguments made in the District Court does not satisfy the rules of appellate procedure . . . . Elkin has thus waived his argument . . .").[8]

Cevdet's brief violated these principles. With respect to its appeal of the orders granting summary judgment to Hinckley Allen and Dicker, Cevdet's brief seeks to incorporate by reference its filing before the District Court, allegedly "[i]n the interest of brevity and due to word count limitations." Appellant's Br. at 52, 52 n.3. Such incorporation neither serves the interest of brevity nor complies with the word limits. Indeed, Cevdet's effort to incorporate the filing is an end run around both Rule 28's word limit and our order denying Cevdet's request to file a brief exceeding 15,000 words.[9] See Papp v. Fore-Kast Sales Co., Inc., 842 F.3d 805, 816 (3d Cir. 2016) (holding arguments incorporated by reference "nullify the page or word limits imposed by appellate and local rules" and declining to review them).

[8] Defendants appropriately raised these procedural requirements and explained how Cevdet failed to meet them. Cevdet did not dispute its blatant violations.

[9] The filing related to Hinckley Allen that Cevdet seeks to incorporate is a counterstatement of undisputed material facts spanning fifteen pages. Cevdet's opening brief was 62 pages and 14,502 words.

With respect to its appeal of the order granting the Sunrise Defendants' motion for summary judgment, Cevdet violated Rule 28 in two ways. First, although Cevdet cited to the record, its argument is devoid of any statutory or case law support. Second, sections of Cevdet's brief nearly replicate its filing before the District Court. By simply duplicating the brief submitted to the Court, Cevdet fails to identify where or why the Court erred. See Friend v. Valley View Cmty. Unit Sch. Dist. 365U, 789 F.3d 707, 712 (7th Cir. 2015) (holding brief violated Rule 28(a) where the plaintiff "does not inform us why the district court erred"); Diaz-Colon v. Fuentes-Agostini, 786 F.3d 144, 149 (1st Cir. 2015) (rejecting appeal where "defendants fail[ed] to develop any argument in their brief on appeal for why the district court erred").

For these reasons, Cevdet has not preserved its arguments challenging the orders granting Defendants' motions for summary judgment. Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).[10]

C

Cevdet has also appealed the Magistrate Judge's order denying his motion to extend and compel discovery. Objections to a magistrate's judge's case management and discovery orders must be presented to the district judge. See Fed. R. Civ. P. 72(b)(3) (providing that "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"); L. Civ. R. 72.1(c)(1) (D.N.J.) (outlining procedure for appealing a magistrate judge's determination of non-dispositive

[10] Cevdet also waived its accounting and aiding and abetting of conversion, fraud, and breach of fiduciary duty claims because it made no reference to them on appeal.

motions to the district judge). A party who "fail[s] to appeal to the district court a magistrate judge's order in a nondispositive matter may not raise an objection to it on appeal to a circuit court." Cont'l Cas. Co. v. Dominick D'Andrea, Inc., 150 F.3d 245, 252 (3d Cir. 1998), as amended (Sept. 8, 1998).

Cevdet never appealed the Magistrate Judge's order to the District Court, and it has not presented extraordinary circumstances that warrant our consideration of the order. United Steelworkers of Am., AFL-CIO v. New Jersey Zinc Co., 828 F.2d 1001, 1008 (3d Cir. 1987), as amended (Oct. 6, 1987) ("For similar reasons, this court has consistently held that it will not, absent extraordinary circumstances, address on appeal issues not originally presented to the district court." (citations omitted)). Therefore, we will not consider Cevdet's appeal of this order.

III

For the foregoing reasons, we will affirm.